UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JEFFREY SCOTT LARRABEE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. |
| | ) | 11-11853-FDS |
| v. | ) | |
| | ) | |
| DUNCAN MATHEWSON, JEFFREY | ) | |
| MCKINNON, and ROBERT MCKINNON, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT

**SAYLOR, J.**

Pending before the Court is defendant Duncan Mathewson's motion to remove the default judgment entered against him and permit him leave to file an amended answer. A default was entered against defendant Mathewson under Fed. R. Civ. P. 55(a) on February 13, 2013. On May 16, 2013, the Court granted plaintiff's motion for default judgments against all three defendants and directed that plaintiff submit any evidence of damages by June 14. Defendant Mathewson subsequently filed this motion on July 17, seeking relief from the default judgment pursuant to Fed. R. Civ. P. 60(b)(1), (3), and (6), as well as leave to file an amended answer. For the reasons set forth below, the Court will grant the motion, but nonetheless award plaintiff costs and attorney's fees for his efforts in pursuing the default.

**I.      Standard of Review**

Fed. R. Civ. P. 60(b) provides a mechanism for setting aside a judgment in certain circumstances. The rule provides in relevant part:

> [T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> . . .
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by the opposing party;
> . . .
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Although the First Circuit has taken a somewhat "harsher tack" in its approach to motions brought under Fed. R. Civ. P. 60(b) than other circuits, district courts still enjoy "considerable discretion" in affording relief. *Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 64 (1st Cir. 2001); *Cotto v. United States*, 993 F.2d 274, 277 (1st Cir. 1993). "[Rule 60(b)] must be applied so as to recognize the desirability of deciding disputes on their merits, while also considering the importance of finality as applied to court judgments." *Davila-Alvarez*, 257 F.3d at 64 (internal citations and quotation marks omitted).

## II.   Analysis

Rule 60(b)(1) requires a showing of "excusable neglect" in order to obtain relief from final judgment. *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164 (1st Cir. 2004).[1] Under this standard, the Court is permitted, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993)). In making that determination, the Court must consider the length of delay, the reason

---

[1] The United States Supreme Court outlined the standard for "excusable neglect" in *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993). Although that standard arose under the bankruptcy code, courts in the First Circuit have consistently applied it when conducting an analysis under Rule 60(b)(1). *$23,000 in U.S. Currency*, 356 F.3d 157 at 164 n.7; *Davila-Alvarez*, 257 F.3d at 64 n.9.

for delay, whether the movant acted in good faith, and prejudice to the opposing party. *Davila-Alvarez*, 257 F.3d at 64. Of all the factors, "the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, . . . . [a]t the end of the day, the focus must be upon the nature of the neglect." *Hospital del Maestro v. Nat'l Labor Relations Bd.*, 263 F.3d 173, 175 (1st Cir. 2001) (internal citations and textual alterations omitted); *accord $23,000 in U.S. Currency*, 356 F.3d at 164.

A litigant has a responsibility to understand the procedural rules affecting his or her case, and "ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *$23,000 in U.S. Currency*, 356 F.3d at 164. *Pro se* litigants are normally held to the same standard. *See Cintron-Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 527 (1st Cir. 2002) (*pro se* litigant's failure to keep the Court apprised of her situation or to seek approval for repeated noncompliance with deadlines was not excusable neglect, despite personal tragedy); *Claremont Flock*, 281 F.3d at 299-300 (*pro se* litigant who did not receive court notices was nevertheless denied relief under 60(b), where he failed to update his address with the Court and erroneously believed that the case was over); *Pizzo v. Gambee*, 754 F. Supp. 2d 234, 237 (D. Mass. 2010) (*pro se* litigant's failure to meet deadline was not excusable neglect, although he erroneously believed he had responded to the case in an appropriate manner).

Defendant contends that he lacked notice of the status conferences conducted by the Court on November 30, 2012; January 18, 2013; and March 14, 2013. Notice for each of these conferences was mailed to defendant's address in Florida. Defendant asserts, however, that during the time period from October 10, 2012, to July 9, 2013, he was living in his Vermont

3

residence, rather than his Florida residence. He further asserts that from December to February he was suffering from a painful serious injury to his leg. He asserts that he did not visit Florida at all during the relevant time period, and the notices sent to that address were not forwarded to him until June 20, 2013. Defendant also asserts that plaintiff was aware that he maintained two residences and yet made no effort to provide notice to defendant in Vermont or to inform the Court. Instead, plaintiff represented to the Court in January 2013 that he had lost contact with the defendants.

Even a *pro se* litigant is generally responsible for making certain that the address on file with the Court is correct. However, defendant's only filing with the Court— the answer to the complaint filed on February 15, 2013—included no address. Thus, it appears that the clerk's office relied on the Florida address provided by plaintiff when providing notice to defendant. It is now apparent that defendant did not receive actual notice of any of the scheduling conferences. The Court entered a default against defendant as a result of his failure to appear at those conferences.

There is no indication that defendant acted in bad faith. In fact, he responded to the complaint by filing a *pro se* answer in February, 2012. No action was taken in the case for eight months following that submission when the Court set a scheduling conference for November, 2012. Neither plaintiff nor any of defendants appeared for that scheduling conference. The Court then held conferences on January 18, 2013; February 11, 2013; and March 14, 2013 at which plaintiff, but no defendants appeared. On the basis of defendants' failure to appear at these conferences, plaintiff moved for, and was granted, a default judgment. On July 17, 2013, defendant filed the present motion to vacate the default judgment against him and an

accompanying motion for leave to file an amended answer.

The Court is not confronted with a situation here where a trial has been conducted against the other defendants or the litigation progressed significantly while defendant failed to respond. *Cf. Baldiga v. Bowdring (In re Cyphermint, Inc.)*, 2011 U.S. Dist. LEXIS 62504 (D. Mass. 2011). Furthermore, the delay in responding to the Court's notices and entry of default was not egregious; it was on the order of a few months. These factors counsel in favor of granting defendant's motion.

Plaintiff also would not be unduly prejudiced by the Court reopening the case against defendant Mathewson. As noted, activity in the case has been fairly minimal, especially in the time period prior to the last six months. Plaintiff himself failed to appear at the Court's first scheduling conference; the Court nonetheless excused his neglect. And the default judgments against the other two defendants will remain undisturbed regardless of the Court's action as to defendant Mathewson.

Finally, and perhaps most importantly, it appears from defendant's proposed amended answer that he has now retained counsel and has a potentially meritorious defense to the claims against him. As the Court stated at the outset, "[Rule 60(b)] must be applied so as to recognize the desirability of deciding disputes on their merits." *Davila-Alvarez*, 257 F.3d at 64. Accordingly, defendant's motion to vacate the default judgment against him, and his accompanying motion for leave to file an amended answer, will be granted. However, because defendant unquestionably could have been substantially more diligent in contacting the Court as to the status of the case against him and the address on file, the Court will also order that defendant be liable for any extra costs or attorney's fees incurred by plaintiff in pursuit of the

default against him.  *Cf. Davila-Alvarez*, 257 F.3d at 65 (no excusable neglect where litigant failed "to communicate with the district court or alert defendants that they were using the incorrect address"); *Claremont Flock*, 281 F.3d at 299-300 (*pro se* litigant who did not receive court notices was nevertheless denied relief under 60(b), where he failed to update his address with the Court and erroneously believed that the case was over).

### III.  Conclusion

For the foregoing reasons, defendant's motion to vacate the default judgment is GRANTED; defendant's motion for leave to file an amended answer is GRANTED; and defendant is ORDERED to reimburse plaintiff for any additional costs or attorney's fees incurred in pursuit of the default against him, upon the filing by plaintiff of a sworn statement of his relevant fees, costs, and expenses, and as approved by the Court.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  August 15, 2013